UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                    :
ANDREW ARNOLD,                           :
                    Plaintiff,      :
                                    :    09 Civ. 5576 (DLC)
            -v-                    :
                                    :    OPINION & ORDER
1199 SEIU,                               :
                    Defendant.      :
                                    :
----------------------------------------X

Appearances:

For Plaintiff Pro Se:
Andrew Arnold
1964 Nereid Avenue
Bronx, NY 10466

For Defendant:
Richard Dorn
Levy Ratner, P.C.
80 Eighth Avenue Floor 8
New York, NY 10011-5126

DENISE COTE, District Judge:

Pro se plaintiff Andrew Arnold brings this lawsuit against

defendant 1199 SEIU (the "Union") for alleged breach of its duty

of fair representation in connection with plaintiff's discharge

from employment at Beth Abraham Health Services ("Beth

Abraham").  On June 29, 2009, the Union filed this motion to

dismiss and motion for summary judgment.  For the following

reasons, both of the Union's motions are granted.

<u>BACKGROUND</u>

The uncontested facts below are taken from the parties'
Local Rule 56.1 Statements of Material Facts Not in Dispute as
supported by the adjoining declarations and exhibits.[1]  Certain
additional facts alleged by plaintiff in his March 26, 2009
complaint are assumed to be true only for the purposes of
resolving the motion to dismiss.

The plaintiff, Andrew Arnold, was a full-time employee of
Beth Abraham working as an "Authorization Specialist" until he
was fired on April 5, 2007.  While working at Beth Abraham,
plaintiff was a member of the Union.  The terms of employment
for Union members working at Beth Abraham were governed by a
collective bargaining agreement ("CBA") concluded between the
Union and the League of Voluntary Hospitals and Homes of New
York, an agent acting on behalf of Beth Abraham.  The terms of
the CBA included, <u>inter</u> <u>alia</u>, that neither Beth Abraham nor the

---

[1] In serving the plaintiff with its motion for summary judgment,
the defendant included a "Notice to Pro Se Litigant Who Opposes
a Motion for Summary Judgment" as required by law in this
Circuit.  See <u>Hernandez v. Coffey</u>, 582 F.3d 303, 308 (2d Cir.
2009).  The plaintiff thereafter submitted his own Local 56.1
Statement.  Within that statement, the plaintiff also included a
section styled as "Statement of Additional Disputed Facts" (the
"Additional Statement").  The Additional Statement includes a
list of allegations that plaintiff believes are issues of
disputed material fact requiring trial.  These disputed facts
concern, in large part, the knowledge that the Union possessed
concerning plaintiff's employment relationship with Beth
Abraham.  Because none of the facts included in the Additional
Statement materially affect the legal analysis as set forth
below, however, they are not described in detail herein.

Union could "discriminate[] against" any covered Union employee.
The complaint alleges that plaintiff was discriminated against
by Beth Abraham during his employment in violation of the CBA.
Specifically, plaintiff alleges that Beth Abraham assigned him a
"disproportionately greater workload than workers of coordinate
jurisdiction of a different gender."

After the plaintiff was fired, the Union grieved
plaintiff's discharge from employment.  A "step III grievance
conference" was held in May 2007, at which plaintiff, three
Union representatives, and four Beth Abraham administrators were
present (the "step III conference").[2]  Following the conference,
Beth Abraham upheld its decision to fire plaintiff and denied
the grievance by memorandum of May 24, 2007.  The basis for this
decision, as set out in the memorandum, was that plaintiff had
exhibited "[s]ubstandard work performance" and had "failed to
improve [his] work performance" since a previous step III
hearing held on September 13, 2006.

Thereafter, by letter of May 30, 2007, a representative of
the Union, Elise Laviscount, notified plaintiff that it had
conducted "a thorough investigation of [his] grievance" and

---

[2] The complaint alleges that the grievance conference was held on
May 24, 2007, while the memorandum of decision dated May 24
states that the grievance conference was held on May 14.  The
question of whether the Union "defended [plaintiff]
appropriately" at the step III conference is disputed between
the parties.

"concluded that it does not warrant arbitration."  The letter
noted, however, that plaintiff had the right "to make further
appeal through the Chapter Hearing and Appeal Board" by
submitting a request for appeal in writing within 48 hours of
plaintiff's receipt of the Union's letter.  The Chapter Hearing
and Appeals Board had the authority to direct the Union to take
plaintiff's case to arbitration.[3]  The letter went on to state
that "your failure to respond within the specified time will
leave us no alternative but to believe you are not interested in
pursuing the matter and we will, therefore, consider the case
closed."  Plaintiff did not file a request to appeal the Union's
determination.  Instead, on July 7, 2007, plaintiff sent a
letter to the Union stating that he was "not in a position to
revive our now defunct relationship of some 30+ days."  On
September 4, 2007, the Union sent a letter advising plaintiff
that his case was closed because plaintiff had failed to file an
appeal of the denial of his grievance.

    In the complaint, plaintiff alleges that the Union
"fail[ed] to represent [him] fairly" in connection with his
grievance hearing.  The complaint also alleges that the Union
failed to conduct an adequate investigation before deciding not

---

[3] The plaintiff denies that the Union disclosed in its letter of
May 30, 2007, that the Chapter Hearing and Appeals Board had the
authority to send the plaintiff's grievance to arbitration.
Nevertheless, the plaintiff does not dispute that the Appeals
Board had this authority.

to take plaintiff's claims to arbitration; that the Union

"breached the contract"; and that, as a result, "1199 SEIU has

breached its statutory duty of fair representation by the manner

in which it handled [plaintiff's] grievance."

<u>PROCEDURAL HISTORY</u>

Plaintiff filed this action in New York Supreme Court,

Bronx County, on or about March 26, 2009.  After being served,

the Union filed a notice of removal in this Court on June 17 and

filed a motion to dismiss and motion for summary judgment on

June 29.  Plaintiff moved to remand his case to state court on

July 1, and the plaintiff's motion was denied by an August 17

Memorandum Opinion and Order.  The Union's motion to dismiss and

motion for summary judgment became fully submitted on August 27.

<u>DISCUSSION</u>

I.   Standards of Decision

The Union has moved to dismiss the complaint pursuant to

Federal Rule of Civil Procedure 12(b)(6) and, in the

alternative, has moved for summary judgment pursuant to Rule 56.

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must

contain a 'short and plain statement of the claim showing that

the pleader is entitled to relief.'"  <u>Ashcroft v. Iqbal</u>, 556

U.S. ___, 129 S. Ct. 1937, 1949 (2009).  For a plaintiff's claim

to survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  Id. (quoting Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (citation
omitted)).  Applying this plausibility standard is "a context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense."  Iqbal, 129 S. Ct. at
1950.

A court considering a motion to dismiss pursuant to Rule
12(b)(6) "must accept as true all allegations in the complaint
and draw all reasonable inferences in favor of the non-moving
party."  Vietnam Ass'n for Victims of Agent Orange v. Dow Chem.
Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted).
Moreover, pleadings filed by pro se plaintiffs are to be
construed liberally.  See Erickson v. Pardus, 551 U.S. 89, 94
(2007) (per curiam) ("[A] pro se complaint . . . must be held to
less stringent standards than formal pleadings drafted by
lawyers." (citation omitted)); Harris v. Mills, 572 F.3d 66, 72
(2d Cir. 2009) ("Even after Twombly, . . . we remain obligated
to construe a pro se complaint liberally.").

A motion for summary judgment under Rule 56 involves a
different standard.  Summary judgment may not be granted unless
all of the submissions taken together "show that there is no
genuine issue as to any material fact and that the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.

6

56(c).  The moving party -- here, the Union -- bears the burden of demonstrating the absence of a material factual question; in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).  Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, however, the non-moving party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e)(2); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Moreover, only disputes over material facts -- "facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson).

II.  Breach of Duty of Fair Representation

A.  Applicable Law

Although plaintiff does not refer to a federal statute by name, the complaint does allege a violation of the defendant's "statutory duty of fair representation."  The "duty of fair representation is implied from § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)."  White v. White Rose Food, a Div. of DiGiorgio Corp., 237 F.3d 174, 179 n.3 (2d Cir. 2001).[4] Plaintiff's claims also involve interpretation of the CBA between the Union and Beth Abraham, and as such, plaintiff's claims are governed by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  "In order to provide individual employees with recourse when a union breaches its duty of fair representation in a grievance or arbitration proceeding, the Supreme Court has held that an employee may

---

[4] The Supreme Court further explained in DelCostello v. Int'l Brotherhood of Teamsters:

> The duty of fair representation exists because it is
> the policy of the National Labor Relations Act to
> allow a single labor organization to represent
> collectively the interests of all employees within a
> unit, thereby depriving individuals in the unit of the
> ability to bargain individually . . . .  In such a
> system, . . . it must be the duty of the represent-
> ative organization to serve the interests of all
> members without hostility or discrimination toward
> any, to exercise its discretion with complete good
> faith and honesty, and to avoid arbitrary conduct.

462 U.S. 151, 164 n.14 (1983) (citation omitted).

bring suit against both the union and the employer." Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29, 33 (2d Cir. 2000). Such a suit is known as "a hybrid § 301/duty of fair representation claim." Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 282 (2d Cir. 2005); see also DelCostello, 462 U.S. at 164-65 (outlining the two claims and identifying them as "inextricably interdependent"). To prevail on a hybrid Section 301/fair representation claim, the plaintiff "must demonstrate both (1) that [the employer] breached its collective bargaining agreement and (2) that [the union] breached its duty of fair representation." Sanozky, 415 F.3d at 282. In other words, although the plaintiff need not name both the employer and the union as defendants, the plaintiff must prove fault by both in order to succeed against either. Carrion, 227 F.3d at 33; see also DelCostello, 462 U.S. at 165 ("The employee may . . . sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.").

For the purposes of deciding these motions, only the Union's duty of fair representation will be considered. "A union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." Sanozky, 415 F.3d at 282 (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44

(1998) (alteration omitted)).  This duty applies to a union's representation of an employee during the grievance process following an employee's termination.  See Wilder v. GL Bus Lines, 258 F.3d 126, 129 (2d Cir. 2001) (noting that "[a] wrongfully discharged employee may sue his . . . union" for failing to pursue the employee's grievance through CBA remedial procedures).  Although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," members "do not have an absolute right to have their grievances taken to arbitration."  Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 128 (2d Cir. 1998) (citation omitted).  "[T]he duty of fair representation is not breached where the union fails to process a meritless grievance," Cruz v. Local Union No. 3 of Int'l. Bhd. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994), because "a union must be allowed to exercise reasonable discretion as to how it can best satisfy the interests of the individual as well as the interests of the collective unit."  Pyzynski v. N.Y. Cent. Ry. Co., 421 F.2d 854, 864 (2d Cir. 1970).

B.   Statute of Limitations

     The statute of limitations period on a hybrid Section 301/fair representation claim is six months, as established by the Supreme Court in DelCostello v. International Brotherhood of

Teamsters.[5]   See DelCostello, 462 U.S. at 165.   The six-month
period "begins to run when the employee knew or should have
known of the breach of the duty of fair representation" -- in
other words, the date when an employee discovers, or in the
exercise of reasonable diligence should have discovered, the
acts constituting the alleged violation.   White v. White Rose
Food, a Div. of DiGiorgio Corp., 128 F.3d 110, 114 (2d Cir.
1997); see also Ramey v. Dist. 141, Int'l Ass'n of Machinists &
Aerospace Workers, 378 F.3d 269, 278 (2d Cir. 2004) ("[I]n a
suit alleging a breach of the duty of fair representation
brought by union members against their union, the cause of
action accrues no later than the time when the union members
knew or reasonably should have known that a breach has occurred"
(citation omitted)).   Moreover, "[o]nce a plaintiff learns of
his union's breach of its duty of fair representation, the
union's subsequent failure to actually represent the plaintiff[]
cannot be treated as a continuing violation that precludes the
running of the limitations period."   Buttry v. Gen. Signal
Corp., 68 F.3d 1488, 1492 (2d Cir. 1995) (citation omitted).

     The statute of limitations is an affirmative defense,
meaning that the defendant bears the burden of proof.   See

---

[5] The Second Circuit has held that this six-month period applies
as well to "unfair representation claims standing alone."   Eatz
v. DME Unit of Local Union No. 3 of Int'l Bhd. of Elec. Workers,
794 F.2d 29, 33 (2d Cir. 1986).

Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995).
"Where the dates in a complaint show that an action is barred by
a statute of limitations, a defendant may raise the affirmative
defense in a pre-answer motion to dismiss." Ghartey v. St.
John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).  In such
a case, the limitations defense is properly raised through a
Rule 12(b)(6) motion.  Id.; see also McKenna v. Wright, 386 F.3d
432, 436 (2d Cir. 2004) ("An affirmative defense may be raised
by a pre-answer motion to dismiss under Rule 12(b)(6) . . . if
the defense appears on the face of the complaint." (citation
omitted)).  Dismissal is appropriate, however, "only if a
complaint clearly shows the claim is out of time," Harris v.
City of New York, 186 F.3d 243, 250 (2d Cir. 1999), and thus the
plaintiff's "survival of a Rule 12(b)(6) motion to dismiss on
statute of limitations grounds requires only allegations
consistent with a claim that would not be time-barred."  Id. at
251.  Construing the complaint liberally, the allegations of the
complaint alone do not clearly demonstrate that plaintiff's
claim is time-barred.  Although the complaint notes that the
plaintiff's grievance hearing was held on May 24, 2007, it is
not evident on the face of the complaint when the plaintiff
knew, or reasonably should have known, of the union's alleged
"failure to represent [him] fairly."

Considered within the framework of summary judgment,
however, plaintiff's lawsuit against the Union is clearly time-
barred.[6]  The statute of limitations began to run in early June
2007, when plaintiff received the Union's May 30, 2007 letter
informing him that it would not pursue his grievance to
arbitration.  Approximately twenty-one months elapsed between
the date that the plaintiff received the Union's letter and the
date that plaintiff filed suit in New York Supreme Court, and as
such, the six-month statute of limitations under DelCostello
operates to bar plaintiff's claim.  See Carrion, 227 F.3d at 32.

Plaintiff argues in opposition that "he did not attain
'constructive knowledge'" of the Union's breach of its duty of
fair representation until he received the Decision and Order of
December 16, 2008, issued by Hon. Geoffrey Wright of the New
York Supreme Court.[7]  Plaintiff's argument is without merit.  It
is the plaintiff's knowledge of the Union's allegedly violative
conduct, not the plaintiff's knowledge of his own legal rights
and remedies, that determines when the statute of limitations

---

[6] Because the complaint fails on this ground, it is unnecessary
to reach defendant's claims that the plaintiff failed to exhaust
his union or administrative remedies with respect to his hybrid
§ 301/fair representation claim.

[7] Plaintiff does not explain why or how Justice Wright's Decision
and Order gave rise to his "constructive knowledge."  The
Decision and Order itself, attached as an exhibit to plaintiff's
opposition papers, makes no reference to plaintiff's potential
claims for relief under the LMRA.

begins to run.  See, e.g., Cohen v. Flushing Hosp. & Med. Ctr.,
68 F.3d 64, 68 (2d Cir. 1995) ("A breach of duty by the union is
apparent to the member at the time she learns of the union
action or inaction about which she complains." (citation
omitted)).  Here, it is undisputed that plaintiff learned of the
Union's failure to represent him adequately no later than June
2007, when plaintiff received the letter from Ms. Laviscount
informing him that the Union would not contest the denial of his
grievance by taking his case to arbitration.  This knowledge was
more than sufficient to trigger the limitations period.  See,
e.g., id. (noting that the plaintiff's knowledge that the union
"had done nothing . . . to pursue his grievance" against the
employer as of a certain date was "sufficient to start the
statute of limitations running").  Indeed, the July 7 letter
that plaintiff sent to the Union declaring that his relationship
with the Union was "defunct" makes clear that the plaintiff was
aware, as of that date, that the Union had failed to adequately
represent him.  See Williams v. N.Y. City Hous. Auth., 458 F.3d
67, 70 (2d Cir. 2006) (noting, based on a letter written by
plaintiff to the union "voicing her dissatisfaction," that
plaintiff had been on notice of the union's alleged breach of
the duty of fair representation).

    The statute of limitations is not a jurisdictional bar, and
as such, a court may toll the limitations period under

exceptional circumstances.  To the extent that plaintiff now seeks to argue that he is entitled to a toll, however, plaintiff has failed to allege facts sufficient to support a finding of extraordinary circumstances, such as facts showing that the Union prevented him from filing a timely claim or misled him regarding its intention not to proceed to arbitration.  See Valdez ex rel. Donely v. United States, 518 F.3d 173, 182 (2d Cir. 2008) (noting that a statute of limitations may be tolled based on "equitable tolling, fraudulent concealment of a cause of action, and equitable estoppel"); Cohen, 68 F.3d at 69 (discussing when a statute of limitations may be tolled for "[f]raudulent concealment . . . predicated on a union deliberately misleading the plaintiff about a breach" of its duty of fair representation).  The plaintiff's ignorance of his own legal remedies, without more, is an insufficient basis for equitably tolling the statute of limitations.

### III.  Breach of Contract

In his opposition declaration, plaintiff refers to his complaint as "seeking relief for . . . breach of contract." This cause of action, deriving from New York state law, is not set out explicitly in either the complaint or in the opposition brief.

Even if the complaint were construed liberally to allege a claim for breach of contract, however, any such claim must necessarily fail because it is preempted by Section 301 of the LMRA.  "[A]ny state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301," meaning that "only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements."  United Steelworkers of Am., AFL-CIO-CLC v. Rawson, 495 U.S. 362, 368 (1990).  Whether a state-law claim is preempted requires deciding whether it "is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985); see also Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001) ("Where the resolution of a state-law claim depends on an interpretation of the collective-bargaining agreement, the claim is pre-empted." (citation omitted)).  Because the complaint could only reasonably be construed to allege that the Union violated the CBA, and not any other contract, plaintiff's separate state-law claim for breach of contract is preempted and must be dismissed.[8]

---

[8] Plaintiff's complaint does not make reference to the 1199 SEIU Union Constitution.  To the extent that the plaintiff sought to rely upon breach of the Union Constitution as the basis for his breach of contract claim, however, such a claim would also be

IV.   Tortious Interference with Contract

Finally, in his opposition brief, plaintiff also maintains that the complaint states a state-law claim for tortious interference with contract.  Under New York law, "[t]o establish tortious interference, a plaintiff must show (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages."  White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281, 285 (2d Cir. 2006) (citation omitted).

Plaintiff's claim is without merit and must be dismissed. A claim for tortious interference with the CBA cannot lie against the Union because the Union is itself a party to the CBA.  See Albert v. Loksen, 239 F.3d 256, 274 (2d Cir. 2001) ("The tort of interference with an employment contract cannot lie against the [defendant] because it is a party to the alleged employment contract" (citation omitted)).  Because no one aside from the Union is named as a defendant in this action, plaintiff's tortious interference claim must necessarily fail.

---

preempted by the LMRA.  See Wall v. Constr. & Gen. Laborers' Union, Local 230, 224 F.3d 168, 178 (2d Cir. 2000) (stating that "Section 301 of the LMRA preempts claims that are inextricably intertwined with consideration of the terms of a labor contract" and noting that "for preemption purposes, the term 'labor contract' includes union constitutions." (citation omitted)).

In any event, any claim for tortious interference with the CBA would also be preempted by Section 301.  Preemption under Section 301 extends not only to contract claims, but also to suits alleging liability in tort.  See Allis-Chalmers, 471 U.S. at 210-11 (holding that an employee's tort lawsuit against an employer arising out of a collective bargaining agreement was preempted by the LMRA); Elec. Workers v. Hechler, 481 U.S. 851, 862 (1987) (extending Allis-Chalmers to preempt a tort suit by an employee against her union); Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted . . . ."); Anderson v. Aset Corp., 416 F.3d 170, 171-72 (2d Cir. 2005) (per curiam) (holding that a plaintiff's claim against a third party for tortious interference with plaintiff's collective bargaining agreement with plaintiff's employer was preempted by Section 301).

CONCLUSION

The Union's June 29 motion to dismiss is granted as to plaintiff's claims for breach of contract and tortious interference with contract, and the Union's June 29 motion for summary judgment is granted as to plaintiff's hybrid Section

18

301/fair representation claim on the basis that the claim is
time-barred. The Clerk of Court shall close the case.

SO ORDERED:

Dated:    New York, New York
          December 15, 2009

                                    DENISE COTE
                           United States District Judge

COPIES SENT TO:

Andrew Arnold
1964 Nereid Avenue
Bronx, NY 10466

Richard Dorn
Levy Ratner, P.C.
80 Eighth Avenue, 8th Floor
New York, NY 10011

Terri L. Chase
Jones Day
222 East 41st Street
New York, NY 10017